[Cite as *State v. Wagner*, 2026-Ohio-2487.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | Case Nos. | 25CA935 |
| | | | 25CA939 |
| Plaintiff-Appellant, | : | | |
| v. | : | | |
| | | DECISION AND JUDGMENT ENTRY | |
| EDWARD J. WAGNER, | : | | |
| Defendant-Appellee. | : | **RELEASED 6/26/2026** | |

APPEARANCES:

Angela R. Canepa, Special Pike County Prosecuting Attorney, Steven L. Taylor and Seth L. Gilbert, Special Assistant Prosecuting Attorneys, Columbus, Ohio, for appellant State of Ohio.

Kathleen Evans and Cassandra Goodpaster, Assistant Public Defenders, Columbus, Ohio for appellee Edward J. Wagner.

HESS, J.,

{¶1}   The State appeals the judgment of conviction of Edward J. "Jake" Wagner on eight counts of aggravated murder, one count of conspiracy to commit aggravated murder, four counts of aggravated burglary, unlawful possession of a dangerous ordinance, three counts of tampering with evidence, forgery, unauthorized use of property, unlawful interception of wire, oral, or electronic communications, obstructing justice, engaging in a pattern of corrupt activities, and unlawful sexual conduct with a minor, in addition to several firearm specifications. Edward Wagner pleaded guilty pursuant to a plea agreement with the State, which included his agreement to testify against codefendants. He also agreed to a joint recommendation of consecutive

sentences of life without parole on the aggravated murder counts.

{¶2}    The State raises four purported errors with the judgment of conviction.[1] The first two errors concern aspects of the trial court's sentencing terms and jail-time credit. In the third, the State contends that the trial court abused its discretion in proceeding with the sentencing hearing before Edward Wagner testified against his codefendants as agreed to under the plea agreement. Last, the State contends the trial court erred when it entered two additional judgments of conviction as "nunc pro tunc" entries when the corrections exceeded the scope of a proper nunc pro tunc entry.

{¶3}    We find that the trial court abused its discretion when it denied the State's request for a continuance and proceeded to sentence Edward Wagner before he performed his testimonial obligations under the plea agreement. We reverse his conviction and remand the matter for resentencing following the completion of Edward Wagner's testimonial obligations. Because we remand for a new sentencing hearing, we need not review the other purported sentencing errors. We find the two additional nunc pro tunc judgment entries exceeded the scope of a proper nunc pro tunc entry and vacate them. We sustain the State's third and fifth assignments of error; the first and second assignments of error are moot. Judgment reversed and cause remanded.

## I. PROCEDURAL BACKGROUND

{¶4}    In November 2018, Edward Wagner was indicted on eight counts of aggravated murder, four counts of aggravated burglary, three counts of tampering with evidence, and one count each of the following: conspiracy; unlawful possession of a dangerous ordnance; forgery; unauthorized use of property; interception of wire, oral, or

---

[1] On reconsideration, we denied the State's motion to appeal its fourth assignment of error and references to it were stricken from its brief. Thus, the State has four assignments of error numbered 1, 2, 3, and 5.

electronic communications; obstructing justice; engaging in a pattern of corrupt activity, and unlawful sexual conduct with a minor. Multiple counts included firearm specifications.

{¶5}    The indictment arose from the murders of eight people at four different residences on April 22, 2016. After investigating, the State indicted Edward Wagner, his brother, George Wagner IV, and his parents, George "Billy" Wagner III and Angela Jo Wagner, for these murders and related crimes, alleging that they planned and carried out these homicides together.

{¶6}    In April 2021, Edward Wagner and the prosecution entered into a plea agreement in which Edward Wagner pleaded guilty to all counts in the indictment and their accompanying firearm specifications and agreed to testify truthfully in the trials against his brother, George Wagner IV, and his father and mother. In exchange, the prosecution would dismiss the death penalty specifications against the Wagner family members. Edward Wagner and the prosecutor also agreed to a joint recommendation of consecutive sentences of life without parole on the aggravated murder counts. The prosecutor, the defense, and the trial court agreed that the sentence would not be imposed at the change of plea hearing. The parties agreed that the sentencing was to be indefinitely continued until the final trial of the Wagner family was concluded to ensure Edward Wagner's cooperation and truthful testimony in accordance with his plea agreement.

{¶7}    In June 2024, a new visiting judge was assigned to the case. On November 26, 2024, the trial court sua sponte set Edward Wagner's sentencing hearing for December 17, 2024, which was before he would fulfill his testimonial obligations under the plea agreement. One of the victims requested a continuance because the unexpected

setting of the sentencing hearing did not leave the victims with adequate time to prepare their restitution evidence. On December 12, 2024, the trial court cancelled the sentencing hearing and stated it would be rescheduled on a later unspecified date. On December 23, 2024, the trial court rescheduled Edward Wagner's sentencing hearing for January 3, 2025, which was also before he would be called upon to testify under the plea agreement. The victim's advocate and the special prosecutor both requested a seven-day continuation of the hearing due to their travel conflicts. The trial court denied their requests for a continuance on the grounds that another attorney from the prosecutor's office could stand in and the victim's advocate could likewise find a substitute.

{¶8}  Additionally, the State filed an objection to the timing of the sentencing hearing, explaining that (1) the trial court, prosecutor, and defense had agreed to postpone the sentencing until after Edward Wagner fulfilled his trial testimony obligations under the plea agreement; (2) neither Edward Wagner nor the prosecutor had requested a sentencing hearing; and (3) the Supreme Court of Ohio in *State v. Gilbert*, 2014-Ohio-4562, ¶ 11 advised trial courts to follow the standard practice "of ensuring that the defendant had complied with the plea agreement prior to imposing the sentence and entering a final judgment. Should a defendant experience a change of heart and renege on a plea agreement before a sentence has been imposed, the trial court is still able to ensure that the defendant does not receive anything that he or she is not entitled to receive regarding the dismissal of any charges or a lesser sentence. There is no justification to create an exception from this standard procedure."

{¶9}  In support of its objection, the State submitted the affidavit of the Honorable Robert Junk, Pike County Common Pleas Court Judge, who, before his election to the

bench, served on the prosecution team when Edward Wagner's plea agreement was negotiated. Judge Junk testified that the parties and the trial court "explicitly agreed to hold off on sentencing" Edward Wagner, his mother Angela, and another family member, "until these Defendants had held up their part of the agreement by testifying truthfully against the other codefendants at their respective trials, should those trials take place."

**{¶10}** The trial court overruled the State's objection and proceeded with the sentencing hearing on January 3, 2025. It sentenced Edward Wagner but did not follow the joint sentence recommendation. Instead of multiple consecutive life terms without parole, the trial court sentenced him to concurrent terms of 20-years to life in prison and two 6-year gun specifications to run consecutively to each other and the 20-year sentence, making Edward Wagner eligible for parole after serving 32 years.

**{¶11}** The State filed a timely motion for leave to appeal the January 3, 2025 judgment of conviction, which we granted.

## II. ASSIGNMENTS OF ERROR

**{¶12}** The State assigned the following assignments of error:

I. The trial court erred in imposing only two six-year firearm terms. (1-3-25 Tr. 44; Dkt. 292, 1-3-25 Judgment of Conviction)

II. The trial court erred in ordering that jail-time credit be deducted from the firearm terms and from the sentences on the underlying counts. (1-3-25 Tr. 44; Dkt. 292, 1-3-25 Judgment of Conviction)

III. The trial court erred and abused its discretion in light of *State v. Gilbert*, 2014-Ohio-4562, in proceeding with sentencing on a cooperating defendant who, pursuant to his plea-bargained agreement approved by the court, was still to complete his cooperation by testifying in a remaining trial of a co-defendant. (1-3-25 Tr. 10-12; Dkt. 292, 1-3-25 Judgment of Conviction)

V. The trial court erred when it filed additional judgments of conviction on February 12 and 20, 2025, that exceeded the scope of a proper

nunc pro tunc entry and which changed parts of the original judgment of conviction that were already under appeal by the State. (Dkt. 305, 2-12-25 Nunc Pro Tunc Judgment Entry; Dkt. 308, 2-20-25 Second Nunc Pro Tunc Judgment Entry)

{¶13} We address the State's third assignment of error first because resolution of it in the State's favor would moot the first and second assignments of error.

### III.    LEGAL ANALYSIS

### A.  Denial of Motion for Continuation of Sentencing Hearing

{¶14} The State contends that the trial court abused its discretion when it held the sentencing hearing for Edward Wagner before he completed his testimonial obligations under the plea agreement. The State argues that the trial court should have continued the sentencing hearing until after the completion of the Wagner family trials because when a trial court imposes a sentence before the defendant fully performs under the plea agreement, the trial court has no authority to withdraw the plea if the defendant later breaches the agreement. The State argues that the trial court abused its discretion in refusing to continue the sentencing hearing until after he testified as required under the plea agreement.

{¶15} Edward Wagner concedes that "when he accepted the State's plea offer the parties understood his sentence would not be imposed until he testified against his co-defendants." However, he argues that the trial court did not abuse its discretion in refusing to postpone the sentencing because it never promised it would delay sentencing him until after he testified at the trials of his codefendants.

### 1.  Standard of Review

{¶16}  "The grant or denial of a continuance is a matter which is entrusted to the

broad, sound discretion of the trial judge." *State v. Unger,* 67 Ohio St.2d 65, 67 (1981). "An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *Id.* An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion, or . . . a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 2008-Ohio-4493, ¶ 23. A trial court's decision is unreasonable if there is no sound reasoning process that would support it. *Scioto Land Co., LLC v. Knauff*, 2023-Ohio-4821, ¶ 50 (4th Dist.).

**{¶17}** In reviewing the trial court's denial of a continuance, we review "the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger*, 67 Ohio St.2d at 67. The reviewing court should weigh the prejudice to the party seeking the continuance against the trial court's right to "control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* The circumstances a reviewing court should consider include:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [party requesting the continuance] contributed to the circumstances which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68; *State v. Stillman*, 2024-Ohio-3363, ¶ 36-37 (4th Dist.).

## 2. Legal Analysis

**{¶18}** Here, the parties agreed that the sentencing hearing would be held after Edward Wagner fulfilled his testimonial obligations in the trials of his family members. The two previous judges assigned to the case accepted the parties' agreement to postpone sentencing and did not schedule a sentencing hearing. The important legal significance

of waiting to sentence Edward Wagner until after he testified in the other trials was explained by the Supreme Court of Ohio in *State v. Gilbert*, 2014-Ohio-4562.

**{¶19}** In *Gilbert*, Gilbert entered into a plea agreement and received the benefit of the bargain, but "chose not to live up to his end of the deal." *Id.* at ¶ 1. Gilbert had agreed in a plea agreement to testify against his father in a murder case. But the trial court sentenced Gilbert without waiting for him to testify against his father as anticipated by the plea agreement. Later he refused to testify as promised. *Id.* at ¶ 2. The trial court brought Gilbert back into court, threw out his plea agreement, and resentenced him. The Supreme Court of Ohio held that the trial court did not retain jurisdiction to revoke the previous plea agreement and resentence Gilbert. *Id.*

**{¶20}** "Once a final judgment has been issued pursuant to Crim.R. 32, the trial court's jurisdiction ends." *Id.* at ¶ 9. "There is no authority for a court to revisit a sentence that has already been imposed based on a defendant's failure to fulfill his obligations under a plea agreement." *Id.* at ¶ 3. Thus, if Edward Wagner is sentenced and then refuses to cooperate and testify in the trial against his family members, as Gilbert did when he refused to testify against his father, Edward Wagner would have breached the plea agreement, but because the judgment of conviction is a final judgment, the trial court would lack jurisdiction to modify the sentence. *Id.*

**{¶21}** The Court in *Gilbert* explained the procedure the trial court should have adopted and identified several cases in which the sentencing occurred *after* the defendant provided testimony under the plea agreement. *Id.* at ¶ 35. The Court acknowledged that this standard practice prevents the situation that arose in *Gilbert,* where the defendant retained all the benefits of the plea agreement but did not have to perform any of his

obligations:

> [I]n each of these cases, the defendant had not been sentenced at the time the trial court considered whether the plea agreement had been breached. Thus, each of these cases is distinguishable because the trial court's jurisdiction was not an issue. Instead, in each of these cases, the state followed the common practice of insuring that the defendant had complied with the plea agreement prior to imposing the sentence and entering a final judgment. Should a defendant experience a change of heart and renege on a plea agreement before a sentence has been imposed, the trial court is still able to ensure that the defendant does not receive anything that he or she is not entitled to receive regarding the dismissal of any charges or a lesser sentence. There is no justification to create an exception from this standard procedure. . . .

> As every teacher knows, you reward the student after the desired behavior occurs, not before. Much like teaching, plea negotiations are driven by the fact that the incentive to do the act in question disappears once the reward has been given.

*Id.* at ¶ 11, 13.

**{¶22}** The rationale the State provided for continuing the sentencing hearing was to ensure Edward Wagner complied with his plea obligations. To support its rationale, the State provided the affidavit of the Honorable Judge Robert Junk, who testified: "Edward Jacob Wagner, Angela Wagner[,] and Rita Newcomb reached negotiated settlements with the State of Ohio. . . . Pursuant to discussions with the respective attorneys and the Court, we explicitly agreed to hold off on sentencing Edward Jacob Wagner, Angela Wagner[,] and Rita Newcomb until these Defendants had held up their part of the agreement by testifying truthfully against the other codefendants at their respective trials, should those trials take place." According to the Court in *Gilbert*, "[t]here is no justification to create an exception for this standard procedure." *Id.* at ¶ 11. Thus, this factor alone weighs heavily in favor of finding that the trial court abused its discretion in denying the continuance and sentencing Edward Wagner before he testified.

**{¶23}** In reviewing the other factors, we conclude that continuing the sentencing hearing would not inconvenience litigants, witnesses, opposing counsel, or the court. The parties all agreed that the sentencing should wait until after Edward Wagner testified in the other trials. Additionally, this was a sentencing hearing that included a plea agreement and jointly recommended sentence. The inconveniences associated with other types of continuances, such as a trial continuance, which entails jury pool logistics, subpoenas of witnesses, attorneys' schedules, expert witnesses, and the trial court's need to preserve extended time on its docket, do not exist. Additionally, the consideration of victims' rights factors strongly here and the victims would be prejudiced if the sentencing hearing was not continued. One of the victims, T.R., separately requested a continuance because the trial court's sua sponte setting of the sentencing hearing left the victims with inadequate time to present the necessary documentation and evidence to establish the full scope of their economic loss. T.R. explained that his right to full and timely restitution would be prejudiced without a continuance:

> Due to the immense amount of financial loss from the funerals and burials of eight family members, potential future lost wages of those deceased victims, the loss of support for the children of the victims, future counseling and other medical treatment, among other losses, the short notice from November 25, 2024, to December 17, 2024,[2] is inadequate notice for the surviving victims to collect all documentation necessary to make a restitution request from this Court with all credible and competent evidence required. Additionally, the victims may need to put forth an expert to testify to future lost wages, and this cannot be accomplished by the December 17, 2024 sentencing date.

The trial court denied the victims' request on the grounds that, in its opinion, there was sufficient time to gather restitution evidence, any restitution hearing could be held after

---

[2] This time period included the Thanksgiving holiday so the actual preparation time was approximately two weeks.

the sentencing hearing, and, in any event, the defendants were all likely indigent anyhow. However, the defendants' indigency status was irrelevant. *Cleveland v. Fuller*, 2023-Ohio-1669, ¶ 23 (8th Dist.) ("whether a defendant is unable to pay the amount of restitution is irrelevant"). And, it is questionable whether the trial court could order restitution following sentencing. *State v. Getz*, 2016-Ohio-3397, ¶ 13 (12th Dist.) (the trial court did not possess continuing jurisdiction to hold a restitution hearing to reconsider the financial sanction).

**{¶24}** We find that judicial considerations also weigh in favor of a continuance. The efficient and successful prosecution of the remaining, non-settling defendants depends in no small part on the testimony of the participating family members, such as Edward Wagner, who pleaded guilty to planning, aiding in, facilitating, and committing the eight murders. The prosecution of those trials will likely be prejudiced and made more complicated if key eyewitnesses such as Edward Wagner refuse to cooperate and testify.

**{¶25}** Finally, we assign little weight to the trial court's need for docket control where the only proceeding left is the sentencing hearing of a defendant with testimonial obligations. The standard procedure is to wait until the defendant testifies prior to sentencing him. Expediency of the proceedings should not be the controlling factor. *R.H. v. J.H.*, 2020-Ohio-3402, ¶ 13 (9th Dist.).

**{¶26}** The trial court's rationale supporting its denial focused exclusively on whether the attorneys or someone from their offices could be present for the sentencing hearing. The trial court reasoned that the special prosecutor did not need to attend the sentencing hearing because the State's sentencing recommendation was in writing. The trial court placed little weight on the victims' advocate's ability to attend and found that

there had been no showing that an advocacy staff from "some sister organization" could not be in attendance. Finally, the trial court found that all defense counsel could be in attendance. In sum, the trial court's denial of the continuance focused on one factor: whether counsel or someone from their offices could be there. The trial court did not address the State's reason for requesting the continuance – the inability to enforce the plea agreement should Edward Wagner breach his obligations and refuse to testify.

**{¶27}** The State renewed its objection to the timing of the sentencing hearing based on *Gilbert, supra,* prior to the start of the hearing. The trial court responded, "I've got your objection. It's been in the record five times. I don't need to hear it again. It's overruled[.]" The trial court's January 8, 2025 judgment entry overruling the objection succinctly states in a single sentence, "Since this objection has previously been considered, and based on the late filing of the objection, the Court overrules the objection." The trial court provided no further rationale, nor did it address the problem identified in *Gilbert*.

**{¶28}** For these reasons, we find that the trial court's decision to deny the request for a continuance was arbitrary and unreasonable. We find no sound reasoning process to support it. Therefore, it constituted an abuse of discretion. We sustain the State's third assignment of error. Because the case is remanded for a new sentencing hearing following Edward Wagner's completion of his plea agreement obligations, the State's first and second assignments of error are moot.

B.  The Two Nunc Pro Tunc Entries

**{¶29}** After the State filed its appeal from Edward Wagner's January 3, 2025 judgment of conviction, the trial court entered two additional judgment entries. The first entry, issued February 12, 2025, was captioned "Nunc Pro Tunc[1] JUDGMENT ENTRY – Sentencing" with a footnote explaining, "To correct an error on page five, as underlined (wrong month in the original entry)." Page five of the January 3, 2025 judgment entry referenced "December 3, 2025" and the nunc pro tunc entry referenced "January 3, 2025." The second entry, issued February 20, 2025, was captioned "Second Nunc Pro Tunc[1] JUDGMENT ENTRY – Sentencing" with a footnote explaining, "To correct an error on page one, as underlined (wrong date in the original entry)." This second nunc pro tunc entry corrected an error in the first nunc pro tunc entry. Page one of the first nunc pro tunc entry, February 12, 2025, stated, "This matter came before this Court on the 17th day of December, in the year of our Lord Christ, 2024." The second nunc pro tunc entry stated, "This matter came before this Court on the 3rd day of January, in the year of our Lord Christ, 2025."

**{¶30}** Although the footnotes indicated that these date changes were the only corrections made to the entries, the State contends that the trial court was "entirely unaware it was unwittingly making *other* changes" to the original January 3, 2025 judgment entry. Specifically, changes were made to the Ohio Revised Code sections in reference to the conspiracy charge, citations to several legal authorities were replaced or removed entirely, and references to advisements about registration as a sexually oriented offender were omitted in the first nunc pro nunc entry. Additionally, modifications were made to the restitution portion of the entry – the original January 3, 2025 entry stated, "Victim restitution is not ordered due to available civil remedies and the lack of data." The

subsequent nunc pro tunc entries stated, "Victim restitution is not ordered due to available civil remedies."

**{¶31}** The State argues that the nunc pro tunc entries are erroneous for three reasons. First there is a judicial lack of intent to make all the changes because the trial court's intent as reflected in the footnotes was to make two date corrections. Second, the additional revisions exceed what is proper for a nunc pro tunc entry. Third, the State's filing an appeal divested the trial court of jurisdiction to issue a nunc pro tunc entry, particularly on matters directly under appeal, such as the jail-time credit calculation, citing *State v. Anderson*, 2024-Ohio-3118, ¶ 34 (1st Dist.) ("While Crim.R. 36 permits a nunc pro tunc entry to be filed 'at any time,' the filing of a notice of appeal divests a trial court of jurisdiction to do so.") and *State v. Hearn*, 2021-Ohio-594, ¶ 13 (4th Dist.) (noting that other appellate districts have held that a trial court cannot file a nunc pro tunc entry while a case is pending on appeal).

**{¶32}** Courts possess inherent authority to correct clerical errors in judgment entries so that the record speaks the truth. However, "nunc pro tunc" entries "are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided." *State ex rel. Mayer v. Henson*, 2002-Ohio-6323, ¶ 14. Although the footnotes to each nunc pro tunc entry state that only two date changes were corrected, the large number of substantive edits made throughout the body of the nunc pro tunc entries far exceeded the corrections identified in the footnotes. A clerical error or mistake refers to "a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." *State v. Miller*, 2010-Ohio-5705, ¶ 15.

**{¶33}** Regardless of whether these additional revisions were intentional or unwittingly made, we find that they exceeded the corrections the nunc pro tunc entries stated were being made and made substantive changes to the original January 3, 2025 judgment of conviction. "[A] trial court lacks the authority to reconsider its own valid, final judgment in a criminal case, with two exceptions: (1) when a void sentence has been imposed and (2) when the judgment contains a clerical error." *State v. Miller,* 2010-Ohio-5705, ¶ 14. Because the two nunc pro tunc entries go beyond correcting the two clerical errors referenced in the footnotes, and make substantive revisions, the trial court lacked authority to issue them. We find that the two nunc pro tunc entries are nullities and are vacated.

**{¶34}** We sustain the State's fifth assignment of error.

## IV.  CONCLUSION

**{¶35}** We sustain the third and fifth assignments of error and find the first and second assignments of error moot. We reverse the trial court's judgment and remand for a new sentencing hearing in accordance with this decision.

JUDGMENT REVERSED, CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED, CAUSE REMANDED and that appellee and appellant shall split costs equally.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P. J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY:

_____
Michael D. Hess, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**